IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RAZWAN ASGHAR,

        Defendant.

Case No. 25-CR-00329-SEH

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion to Revoke Order of Detention [ECF No. 19]. For the reasons set forth below, the motion is denied.

**I. Background and Procedural History**

On September 2, 2025, a federal grand jury charged Defendant Razwan Asghar with receipt and distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). [ECF No. 4]. Before the defendant's initial appearance, the government filed a motion for detention, asserting that the court should detain Asghar because no conditions, or combination of conditions, of release could reasonably assure his appearance and the safety of any other person and the community. [ECF No. 7 at 2].

On September 24, 2025, United States Magistrate Judge Christine D. Little held a detention hearing. [ECF No. 16]. Judge Little found that this

case involved the rebuttable presumption under 18 U.S.C. § 3142(e)(3), that no condition or combination of conditions would reasonably assure the defendant's appearance and the safety of the community, based on probable cause to believe the defendant committed an offense involving a minor victim under 18 U.S.C. § 2251. [ECF No. 21 at 25]. After hearing proffers and argument from both parties, Judge Little ordered that the defendant be detained. [*Id*. at 25–28].

### A. The Government's Proffer

The government proceeded by proffer at the detention hearing. [ECF No. 21 at 3]. The government proffered that "a CyberTip was generated by the Kik messenger platform for an email address and screen and username associated with the defendant. [ECF No. 21 at 3].

Following these cyber tips, Tulsa Police Department Detective Aubrey Williams began investigating the defendant and obtained search warrants for the Kik account associated with "Kida_j1". [*Id*. at 4]. The warrant return contained 7 unique images and videos that met the statutory definition of child sex abuse material. [*Id*.]. It also included "selfie" style photos and videos featuring the defendant. [ECF No. 21 at 4]. The officer was able to determine the IP address associated with the CyberTip was traced back to the Oklahoma Network of Education Enrichment, and the IP address "was a

public wifi service available for users at the University of Oklahoma Health Science Center." [*Id.* at 4]. The Kik search warrant return also included identifying information that indicated the account owner was a nurse in Tulsa and divorced. [*Id.* at 5]. Detective Williams was able to determine that Asghar was a nurse at the OU Health Sciences Center and Trinity Woods in Tulsa. [*Id.* at 6].

The defendant was interviewed by Detective Justin Wolzen and Detective Williams. [*Id.* at 6]. He confirmed that he had used the Kik username "Kida_j1". [*Id.*]. He told Williams and Wolzen that he sent child sex abuse material to other Kik users. [*Id.*] The officers' investigation uncovered messages where "Kida_j1" sought to trade child sex abuse material with other Kik users and offered to try to "match" any content he received from others. [*Id.* at 5].

Two days after he was interviewed by police, the defendant told his employer he needed "to take off for 30 days or so." [*Id.* at 9]. He left the country and went to Bahrain and Saudi Arabia. [*Id.* at 9, 11]. The defendant is a dual citizen of both the United States and Pakistan and has a Pakistani passport. [*Id.* at 11]. Asghar's son described his trip out of the country in August as "kind of fast" and stated that he knew his father was waiting to see if any criminal charges were filed. [*Id.* at 10]. The defendant's ex-wife stated

that while in Bahrain, the defendant seemed "concerned" about coming back to the United States. [*Id.*]. She believed that the defendant had assets concealed from her and wanted her financial help. [*Id.*]. The defendant told police that he sold his car before he left the country, and that he visited both Bahrain and Saudi Arabia while away. [*Id.* at 11]. Both the defendant's ex-wife and his son expressed anger with him. [*Id.* at 16]. Asghar's ex-wife stated that she was upset and intended to leave their shared residence if he was released and returned to their home. [*Id.* at 11-12].

### *B. The Defendant's Proffer*

The defendant proffered that he was willing to surrender his expired Pakistan passport. [*Id.* at 12, 22].[1] The defendant's parents are from Pakistan, but he was born in Bahrain, and his family continues to reside there. [*Id.* at 12–13]. This was not the defendant's first trip to Bahrain, and it was not out of the ordinary for him to visit his family there. [*Id.* at 12–13]. In addition to visiting with his family in Bahrain, the defendant also traveled because he wished to undertake a religious pilgrimage in Saudi Arabia. He felt he needed this time to get himself spiritually and mentally right. [*Id.* at 13]. He returned to the United States voluntarily for his family, his ex-wife

---

[1] The record is unclear about whether the defendant has already surrendered his Pakistani passport, or if he is just willing to do so.

and children, who still reside here. [*Id*.] He understood that he might not be "in the clear" on his criminal charges when he returned. [*Id*. at 14].

### C. The Pretrial Services Report

The defendant requested that Judge Little consider the pretrial services report ("PTSR"), and there was no objection by the government.[2] [*Id*. at 14]. Information in the report was verified by the defendant's ex-wife. [PTSR at 1.]. The report indicated that the defendant had been living in Broken Arrow since 2018. [*Id*.] He owns the home he shares with his ex-wife and son. [*Id*. at 2.]

According to the report, the defendant and his former wife divorced in 2024 and have two adult children together. [*Id*.]. The defendant graduated from high school in Bahrain and began residing in the United States in 2002. [*Id*.]. He attended Tulsa Community College, Northeastern State University, Tulsa Tech, and is a licensed nurse. [*Id*.]. He has been employed full-time by OU Health Physicians and Trinity Woods Health as a nurse for the past seven years, but it was unclear whether he could resume working for those employers if he were released. [*Id*.].

---

[2] There were two pre-trial services reports created by the U.S. Probation Office. An initial, unverified report and then an amended and more verified report. Based upon the context provided at the hearing, it is clear to the undersigned that Judge Little and the parties were always discussing the amended pretrial services report issued on September 24, 2025, at 2:00 p.m. That is the document referenced here.

The defendant is 41 years old, and he reported no physical or mental health conditions to the U.S. Probation Officer. [*Id.* at 1, 3]. His ex-wife reported that his alcohol intake had increased since his initial interaction with law enforcement, although the defendant denied any need for substance abuse treatment. [*Id.* at 3]. He has no prior criminal history. [*Id.*].

Probation recommended that the defendant be released on a $10,000 unsecured bond, with conditions that included location monitoring, substance abuse treatment, alcohol abstinence, surrendering any passport, and electronic device and internet monitoring, among other recommended restrictions. [*Id.* at 5–8].

### *D. Judge Little's Order*

After hearing arguments from both parties, Judge Little explained her findings. First, she found the rebuttable presumption under 18 U.S.C. § 3142(e)(3). [ECF No. 21 at 25]. She found that the defendant partially rebutted the presumption that no condition or combination of conditions will reasonably assure the safety of the community. [*Id.* at 26]. However, she did not find that he had rebutted the presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. [*Id.*]. She further observed that even if she credited his representations about having a place to live and being employable, she

6

would still have to consider the presumption as a factor when making her determination under 18 U.S.C. § 3142(g). [*Id.*].

Next, Judge Little considered factors under 18 U.S.C. § 3142(g) to determine whether there were conditions of release that would reasonably assure the appearance of the person as required and the safety of any other person and the community. [*Id.*]. Considering the nature and circumstances of the offenses, she concluded that the offenses involved receipt and distribution of child pornography, which is a serious offense. [*Id.*]. She further determined that the weight of the evidence was strong, given the defendant's own statements and the electronic physical evidence. [*Id.*]. In considering Asghar's history and characteristics, Judge Little found that he had no prior criminal history and conceded that he did have ties to the community. [*Id.* at 26–27]. However, it was proffered that Asghar's ex-wife would move out of the home they had shared previously if he moved back in. [*Id.* at 27]. With his family support in Tulsa limited and with him likely to reside alone, Judge Little found that electronic device usage monitoring would be of limited use. [*Id.*]. It was also unclear whether the defendant would continue to be employable in his previous field of endeavor. [*Id.*]. Judge Little found that although the defendant was an American citizen, he had demonstrated an intention to flee the country after he was interviewed by

7

law enforcement. [*Id.*]. This was evidenced by his prompt arrangement of out-of-country travel after his law enforcement interview, his nervousness, the sale of his vehicle before he left, and his concern about ensuring that he had no charges pending against him before he returned. [*Id.* at 27–28]. Given this, Judge Little found that there were no conditions or combination of conditions that could reasonably ensure his appearance if he were released. Therefore, she ordered that he be detained on that basis.

## II. Applicable Standard

"If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Under the Bail Reform Act, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the government must prove risk of flight by a preponderance of the evidence, and danger to any other

person or the community by clear and convincing evidence. *Cisneros*, 328 F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community[,]" the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily

differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).[3]

If the Court finds probable cause to believe the defendant committed one of the offenses listed at 18 U.S.C. § 3142(e)(3), then it is presumed—subject to rebuttal—"that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3). "An offense involving a minor victim under section … 2252" is an offense listed at 18 U.S.C. § 3142(e)(3)(E). "Once the presumption is invoked, the burden of production shifts to the defendant." *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). Although the defendant must produce some evidence to rebut the presumption, the government always bears the ultimate burden of persuasion. *Id.* at 1354–55.

## III. Analysis

Based upon its independent, *de novo*, review of the record, the Court concludes that the government has shown by a preponderance of the evidence that there are no conditions, or combination of conditions, that will reasonably assure appearance of the defendant if he were to remain released on pretrial conditions.

---

[3] Unpublished Tenth Circuit opinions are not binding precedent but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1.

Based on review of the indictment, the Court concludes that probable cause exists that the defendant committed an offense involving a minor victim under § 2252(a). *See United States v. Silva*, 7 F.3d 1046 (10th Cir. 1993) (table) ("The grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal … offense[.]"); *see also United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *2 (10th Cir. July 8, 2022) (finding that child pornography charges established a rebuttable presumption). The presumption is subject to rebuttal.

While the defendant attempted to provide different reasons to explain his behavior, he did not rebut the facts presented by the government. He left the country almost immediately after his interview with law enforcement. He told his employer he would be gone for a month. He sold his car – an essential tool for life in suburban Broken Arrow – before he left. [*Id.* at 11]. His travel out of the country was arranged "kind of fast" and he was nervous about returning to the U.S. [*Id.* at 10]. His attempts to reframe the facts cannot be credited as sufficient rebuttal evidence. The presumption applies.

Even if a defendant successfully rebuts the presumption, it remains a factor for consideration for the district court in determining whether a defendant should be detained pending trial or released on conditions. *Stricklin*, 932 F.2d at 1355.

### A. *The Nature and Circumstances of the Charged Offenses*

A federal grand jury charged the defendant with one count of receipt and distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). [ECF No. 4]. The defendant is alleged to have shared child sex abuse material with other Kik users. [ECF No. 21 at 6]. If convicted, the defendant faces a mandatory minimum term of imprisonment of 5 years and up to 20 years. *See* 18 U.S.C. § 2252(b). The Court therefore finds that the defendant is alleged to have committed serious offenses that victimized minor children, and he faces a lengthy sentence if convicted. This factor weighs in favor of detention.

### B. *The Weight of the Evidence*

The second factor also weighs in favor of detention. The government proffered at the detention hearing that the defendant admitted to distributing child pornography through Kik. [ECF No. 21 at 6]. The government also has evidence linking the CyberTip from the messenger platform the defendant used to his email address. [*Id.* at 3]. Thus, the record before the Court indicates that the weight of the evidence is strong.[4] Further,

---

[4] Asghar enjoys the presumption of innocence whether he is detained or released. Pretrial detention is not a punishment, but a regulatory measure to protect the community. *United States v. Salerno*, 481 U.S. 739, 746 (1987). The weight of the evidence is only one factor the Court must consider, among several. 18 U.S.C. § 3142(g).

the defendant has not disputed the weight of the evidence for purposes of detention.

## C. *The History and Characteristics of the Defendant*

The defendant's history and characteristics are mixed. He is 41 years old and has been a member of his community for many years. [PTSR at 1-2.] He has lived in his current home with his ex-wife since 2018 and has two adult children. [*Id*. at 2]. Before the investigation that gave rise to the indictment, he had been consistently employed, reported no history of substance abuse, has no criminal history, and no mental or physical health concerns. [*Id*. at 2–3].

That is only half the story, though. Although the defendant had been steadily employed, he has lost his employment, and it is unclear whether he can return either to his previous employers or to his previous occupation at all. He had been living with his ex-wife and son, but his family members do not appear to be willing to live with him now. [ECF No. 21 at 27]. He reported no substance abuse, but his ex-wife reports his alcohol consumption has increased since the investigation began. [PTSR at 3]. And, of course, he made an apparent attempt to flee the country after he was interviewed by law enforcement. [ECF No. 21 at 9].

Considering all the facts and circumstances, the Court finds this factor weighs in favor of detention.

### *D. Nature and Seriousness of the Danger to any other Person or the Community if Defendant is Released*

The Tenth Circuit has recognized the "long-term serious physiological, emotional, and mental difficulties of children who have been sexually exploited" as a result of being a victim in child pornography. *United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001) (citing *New York v. Ferber*, 458 U.S. 747, 758–60 (1982)); *see also Kroeker*, 2022 WL 2610344, at *2 (upholding district court finding that release of defendant facing child pornography charges would pose "a high risk to the community, and particularly to minors who are unable to protect themselves") (internal quotation marks omitted). Crimes against children are among the most serious. Given the defendant's increasing social isolation and the fact that he would be living without supervision or oversight of any kind the Court cannot craft conditions that would reasonably ensure the safety of the community.

All factors taken as a whole, the Court finds by a preponderance of the evidence that there are no conditions or combination of conditions that would reasonably assure the appearance of the defendant at trial.

## Conclusion

Having conducted a *de novo* review, the Court finds that the government has proven that no release conditions or combinations of conditions would reasonably assure appearance of the defendant. Therefore, the defendant will remain detained pending trial.

IT IS THEREFORE ORDERED that the defendant's Motion to Revoke Detention Order [ECF No. 19] is DENIED.

DATED this 14th day of October, 2025.

*Sara Hill*

Sara E. Hill
UNITED STATES DISTRICT JUDGE